UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

DUSTIN T. BRINAGER,
d/b/a DUSTY ACRES FARM

    54005 Great Bend Road
    Portland, OH 45770

    Plaintiff,

vs.                                                                                                 Civil No.

TOM VILSACK, SECRETARY, UNITED
STATES DEPARTMENT OF AGRICULTURE

    1400 Independence Avenue
    Washington, D.C. 20250

    Defendant.

## COMPLAINT FOR JUDICIAL ENFORCEMENT COMPELLING AGENCY ACTION, DECLARATORY JUDGMENT, AND OTHER RELIEF

Dustin T. Brinager d/b/a Dusty Acres Farm (Mr. Brinager), plaintiff herein, by and through his undersigned attorney, for his complaint herein, alleges as follows:

### INTRODUCTION

1. This is an action to enforce a Director's Determination and to recover 2012 crop year Noninsured Crop Disaster Assistance Program (NAP) benefits owed to Mr. Brinager by the United States Farm Service Agency (FSA) for 2012 crop year tomato losses. FSA denied Mr. Brinager NAP benefits on the basis of its claim that he overstated the number of acres planted to tomatoes during the 2012 crop year.

2. On August 27, 2014, James T. Murray, Deputy Director of the United States Department of Agriculture (USDA), National Appeals Division, issued his Director

Review Determination (Determination). In the Determination, Director Murray found that Mr. Brinager over-reported the number of acres planted to tomatoes, but granted Mr. Brinager equitable relief from failing to comply with the NAP acreage reporting requirements because Mr. Brinager, in good faith, "relied on the action and advice of FSA representatives" in reporting his acres to FSA.

3. Despite the Determination, FSA has failed to accept all of Mr. Brinager's tomato acres and pay Mr. Brinager the full amount of his NAP benefits. FSA contends that the equitable relief granted simply made Mr. Brinager eligible for NAP benefits, but does not entitle him to recover on all the acres he reported. FSA's interpretation ignores the Determination's finding that Mr. Brinager reported his acres as directed by FSA personnel and in a manner consistent with the procedure in place since the 2000 crop year.

## I. JURISDICTION AND VENUE

4. This Court has jurisdiction over this action pursuant to 28 U.S.C. §1331, 28 U.S.C. §2201, 7 U.S.C. §6999, and 5 U.S.C. §§702-706. Plaintiff has exhausted all administrative remedies prior to filing this action. See 7 U.S.C. §6912(e).

5. Venue is proper in this Court pursuant to 18 U.S.C. §1391(e) because the Defendant, the United States Department of Agriculture, through Tom Vilsack as Secretary, resides in this judicial district.

## II. THE PARTIES

6. Dustin T. Brinager d/b/a Dusty Acres Farm, (Mr. Brinager) resides and operates a tomato farm in Meigs County Ohio. Every year, including the year at issue, Mr. Brinager purchases NAP coverage for his tomato crops.

7. Tom Vilsack, Defendant, is the Secretary of the United States of America Department of Agriculture (USDA) and is the federal official responsible for the administration of statutes, regulations, programs, and the conduct of all USDA agencies and employees.

### III. STATEMENT OF FACTS

8. Mr. Brinager is a tomato farmer in Meigs County, Ohio. Mr. Brinager has farmed the acres at issue since 2010. Mr. Brinager's father, Ty Brinager farmed the acres at issue from 1988 until 2000.

9. The Farm Service Agency is an agency of the United States Department of Agriculture responsible for local management of federal farm programs, including the NAP program at issue in this proceeding.

10. Since at least 1988, the Brinagers have purchased NAP coverage for their tomato crop.

11. NAP coverage is administered by FSA and provides a payment to farmers when certain allowed causes of loss damage their crops. The amount of the payment due to a farmer is calculated, at least partially, on the basis of planted acres and net production on those acres. Accordingly, when applying for NAP protection, farmers are required to report their acres and crops to FSA.

12. From 1988 to 2000, Ty Brinager reported linear acres to FSA's Meigs County Office. The number of linear feet in a field determines linear acres.

13. In 2000, the Meigs County Office adopted aerial reporting as the required acreage reporting procedure and instructed Ty Brinager to begin reporting his acres using

aerial maps. Aerial acres are based on aerial photographs of fields provided by FSA with the number of acres in each field pre-marked by FSA.

14. Aerial reporting required Ty Brinager to point out the planted acreage on a map maintained by FSA and FSA personnel would record the number of acres from acres designated on the map. FSA personnel alone determined the number of acres planted based on the fields identified by Ty Brinager.

15. In 2010, Mr. Brinager assumed control of the farming operation from his father and continued reporting aerial acres.

16. On March 15, 2012, Mr. Brinager filed an application for NAP coverage for the 2012 crop year. On July 13, 2012, Mr. Brinager went to the Meigs County FSA Office and reported the fields that he planted tomatoes in and FSA determined that he planted 138.20 aerial acres of hybrid tomatoes.

17. The Meigs County FSA Office had advised Ty Brinager that "tomatoes are tomatoes" and therefore he was not required to report them by variety. Mr. Brinager also understood that the Meigs County Office did not require reporting the tomatoes by variety. Accordingly, Mr. Brinager's tomato acres were reported as hybrid tomatoes and the non-hybrid grape and roma tomato acres were not identified.

18. Excessive heat in June, July, and August caused damage to Mr. Brinager's tomatoes and on August 23, 2012 he filed a notice of loss on all 138.2 acres of tomatoes. On August 23, August 31, and October 17, a FSA loss adjuster visited Mr. Brinager's farm and measured his planted tomato acres. FSA's adjuster determined that Mr. Brinager had planted only 71.1 acres of tomatoes.

19. The FSA adjuster refused to accept Mr. Brinager's aerial acres or count the acres planted to grape or roma tomatoes. For the first time, FSA took the position that aerial reporting of acres was improper and that failing to report each variety of tomato failed to comply with NAP reporting requirements.

20. The change in policy was the result of FSA merging the Meigs County Office with the Galia County Office in 2012. FSA, however, failed to notify Mr. Brinager that aerial reporting of acreage was no longer acceptable until after he reported his 2012 acreage and after he reported damage to his tomatoes. Additionally, FSA did not notify Mr. Brinager that he had to report tomatoes by variety until after he reported his acres and crop and after he reported damage to his tomatoes.

21. The County Committee determined that Mr. Brinager over-reported his tomato acres and exceeded the allowed 15 percent variance. Mr. Brinager's appeals to the County Office, the Ohio State FSA Office, and the National Appeal Division were denied. Accordingly, Mr. Brinager requested a Director Review, including a request for equitable relief.

22. On August 27, 2014, James T. Murray issued his Director Review Determination granting Mr. Brinager "equitable relief from ineligibility for a NAP payment because his reported acreage exceeded his determined acreage by more than 15%." See Exhibit A.

23. In his Determination, Mr. Murray found that Mr. Brinager "relied on the action and advice of FSA representatives" in reporting his acres. Further, Mr. Murray found that "FSA employees told [Mr. Brinager] that the correct way to report his acreage was by pointing out the fields he had planted on aerial photographs" and "FSA would

5

complete the acreage report form using the number of acres the photographs showed were in the field." Mr. Murray also determined that the "record establishes that FSA employees filled out the report forms describing all types and varieties of tomatoes as hybrid tomatoes" and that Mr. Brinager "believed the employees were instructing him to complete the forms correctly."

24. Consequently, Mr. Brinager reported 138.2 acres of tomatoes because that is the number of acres the Meigs County Office determined he planted using their aerial photographs and he reported all tomatoes as tomatoes rather than by variety because that is how the Meigs County Office reported his tomatoes.

25. Despite this Determination, FSA still refuses to accept all of the acres Mr. Brinager reported to FSA and to pay Mr. Brinager the full amount of his NAP benefits. FSA argues that it denied Mr. Brinager's NAP payment because his reported acres exceeded determined acres by more than the allowed 15% variance and that Director's Determination granted Mr. Brinager equitable relief only from exceeding the 15% variance. Further, FSA argues the Determination does not require it to consider additional acres beyond the 71.1 determined acres because it calculates benefits using the lesser of reported or determined acres and it determined that there were 71.1 acres planted during its adjustment of the claim.

26. FSA ignores the very essence of the issue raised in the request for equitable relief and decided in Director's Determination that Mr. Brinager is entitled to equitable relief. Simply, the Meigs County FSA Office determined the number of Mr. Brinager's reported acres and the 15% variance was the result of the newly combined Meigs/Gallia

County Office rejecting its own use of aerial acres and rejecting its own policy to report all tomatoes as tomatoes regardless of variety.

27. FSA determined that Mr. Brinager only planted 71.1 acres because the combined Meigs/Gallia County Office refused to accept aerial map acres and excluded non-hybrid acres that were reported simply as tomatoes. As stated above, the Determination granted Mr. Brinager equitable relief because he relied in good faith on the representations of the Meigs County Office.

28. FSA's interpretation that it can calculate Mr. Brinager's NAP benefits using the 71.1 determined acres is at odds with the Determination. Indeed, FSA bases its refusal to pay Mr. Brinager his NAP benefits on the very facts on which Mr. Murray relied to grant Mr. Brinager relief. Clearly, the basis of the equitable relief award is that the reported acres and the determined acres were calculated for Mr. Brinager by FSA. Equitable relief was granted because Mr. Brinager, in good faith, relied on FSA to accurately report his acres. FSA's failure to comply with its own procedures should not be to Mr. Brinager's detriment.

29. On or about February 6, 2015, FSA issued Mr. Brinager a check in the amount of $28,032.69. This payment represents the amount FSA concedes it owes Mr. Brinager for hybrid tomatoes on the 71.1 acres it determined Mr. Brinager planted and covered under the 2012 NAP program. FSA has failed to pay Mr. Brinager NAP benefits for the non-hybrid tomatoes or for the remaining aerial acres he reported.

## V. COUNT I – Declaratory Judgment

30. Mr. Brinager incorporates by reference paragraphs 1 through 29 as if set forth herein.

31. The United States Department of Agriculture, though the Farm Service Agency, has unjustifiably reduced Mr. Brinager's 2012 NAP benefits while relying upon the Director's Determination. An actual controversy exists between Mr. Brinager and the Department of Agriculture and the Farm Service Agency as to Mr. Brinager's rights with respect to the NAP program.

32. Mr. Brinager prays that this Court declare and determine, pursuant to 28 U.S.C. §2201, Mr. Brinager's rights under the NAP program.

### IV. COUNT II – Request to Enforce the Director's Determination

33. Mr. Brinager incorporates by reference paragraphs 1 through 32 as if set forth herein.

34. FSA has failed to pay Mr. Brinager the NAP benefits that he applied for, for which he paid the required premium, and for which he qualified due to damage suffered by his tomato crop.

35. In accordance with Meigs County FSA Office procedure, Mr. Brinager reported that he planted 138.20 acres of hybrid tomatoes for the 2012 crop year.

36. Meigs County FSA Office procedure required that Mr. Brinager report aerial acres, and he did so by identifying the fields he planted to FSA personnel on FSA aerial maps. FSA personnel then determined that Mr. Brinager planted 138.20 acres.

37. Meigs County FSA Office did not require Mr. Brinager to identify the variety of tomatoes he planted. Accordingly, Mr. Brinager identified the fields he planted tomatoes in and FSA personnel identified all of the tomatoes as hybrid tomatoes.

38. When notified of Mr. Brinager's loss claim, FSA's adjuster refused to accept aerial acres, even though FSA personnel determined the number of acres.

39. Additionally, the FSA adjuster refused to count acres that were planted to grape or roma variety tomatoes, even though FSA personnel identified all tomatoes planted by Mr. Brinager as hybrid.

40. Mr. Brinager planted 67.1 acres of grape and roma tomatoes.

41. FSA's refusal to accept the full amount of Mr. Brinager's reported acres is arbitrary and capricious because Mr. Brinager relied on the advice of FSA personnel in reporting the number of acres planted.

## VII - PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that this Court

1. Accept jurisdiction of this matter;

2. Issue a judgment compelling FSA to accept NAP coverage on the full 138.20 acres of tomatoes that Mr. Brinager reported and enforce the Director's Determination that it has arbitrarily and capriciously failed to enforce and require FSA to pay Plaintiff the remaining NAP benefits;

3. Issue a judgment setting aside FSA's unsupported determination that Plaintiff is entitled to NAP benefits on only 71.1 acres of hybrid;

4. Award Plaintiff his attorney's fees and costs pursuant to the Equal Access to Justice Act, 28 U.S.C. §2412;

5. Award such other and further relief as this Court finds equitable and just.

Respectfully submitted this 25th day of August, 2015.

                                          /s/ Raymond R. Mulera

Raymond R. Mulera
DC Bar No. 459403
Levin & Rosenstein, PC
1395 Piccard Drive, Suite 110
Rockville, MD 20850
Office: 301-208-1795
Mobile: 301-219-1065
Email: ray@levinrosenstein.com